[Civ. No. 5431.   Fourth Dist.   Oct. 5, 1956.]

LOIS HINES et al., Appellants, v. JOSEPH H. HUBBLE et al., Respondents.

Sankary, Sankary & Weathers and Morris Sankary for Appellants.

Linley & Doerr and Joseph Doerr for Respondents.

GRIFFIN, J.—Plaintiffs Lois Hines, individually and as administratrix of the estate of Kenneth J. Hines, deceased, Fred Wuertz, Pauline Wuertz, and Mina I. Johnson brought this action against defendant Joseph H. Hubble, Lucille

Hubble, Chemical Plant Food Corporation et al., for declaratory relief, to quiet title to certain mining claims in Jacumba Mining District in San Diego County, known as Vermiculite Number 1, Number 2, Number 3, Number 4A, and 5A, alleging that the Hines were owners in common and of record, and were in possession of said claims for a long time; that they and the Wuertzs were such owners in common of the Vermiculite Number 4 claim; that plaintiff Mina I. Johnson was such owner of Ceresite-Muscovite Number 2 claim, and that all of them had performed all the acts as required under the Public Resources Code of the State of California and the federal laws to perfect their claims to said mining locations; that defendants claim some estate or interest in them adverse to plaintiffs. Judgment is sought declaring their respective rights.

Defendants, by way of answer, deny plaintiffs' claims and by way of cross-complaint allege that they own certain designated claims in that district described as Mountain View Number 1, Number 2, Center View, Center View Number 2, End View, End View Number 2, Poodle Dog, and Terminal, covering the same property and described as "Circle Group" claims; that defendants are the owners thereof; that on June 3, 1952, defendant Hubble, Dan Nolan, L. E. Watt and F. S. Kearney signed and executed a mining lease of said property to Wilbur C. Kinney and Kenneth J. Hines for a period of 20 years beginning June 3, 1952, but that said lease was abandoned by the lessees about December, 1952; that Nolan, Watt and Kearney have no interest in said property; that the interest of Nolan and Kearney terminated by virtue of their failure to contribute the labor and improvement from 1942 to 1954, which was necessary to hold said claims; that notice of forfeiture under section 2324 of the Revised Statutes of the United States was served on them on August 6, 1954; that L. E. Watt never had an interest in said mine; that Kinney claims no interest in said lease; that plaintiffs refused to quitclaim the interest of Hines in said mines covered by said lease; that on March 10, 1955, defendants demanded such a deed, and that the claims of the plaintiffs are frivolous. Judgment is sought against plaintiffs for damages for failure of plaintiffs to execute such a deed. Defendants ask for judgment quieting their title to such claims. The trial court found that plaintiff Mina I. Johnson's title to the claim should be quieted against defendants but found in favor of defendants against the claimed title of the other plaintiffs to the property alleged. The latter appealed from the portion of the judg-

ment denying them relief under their complaint. They also claim that the order denying their motion to vacate that portion of the judgment and to grant them a new trial should be reversed.

The record comes to us on a settled statement of facts. Between 1938 and 1943, Hubble, Nolan and others filed lode mining claims upon the lands which are the subject of this controversy. About June, 1952, Kenneth J. Hines, now deceased, sought out Hubble and expressed an interest in leasing certain of the claims which Hubble and his associates had filed on, for the purpose of mining them. Conversations ensued between Hines and the prospective lessors, Hubble, Nolan, Watt and Kearney. On June 3, 1952, a document was drawn by the prospective lessors entitled "Mine Lease," describing the subject claims and setting forth a lease for 20 years with certain considerations going to the lessors. The lessees named were Kenneth J. Hines and one Wilbur C. Kinney. This document was signed by Hubble, Nolan, Watt and Kearney, as lessors. It was never signed by Hines nor Kinney. Hines and Kinney went upon the ground and started exploratory and development work. A controversy came up afterwards as to the validity of the lessors' ownership or right in the subject claims. Nolan and Kearney testified that after going upon the ground Hines had gone to the Hubble group and stated to them that he had come to the conclusion that their claims were not good in that they required discovery work, and annual labor had never been done upon the claims; that he was not willing to sign a lease to the claims as he did not believe that they had the right to lease them; that he regarded the ground as open for location and he proposed that he and the Hubble group cooperate in relocating and proving the claims; that if they would not agree to such proposal he proposed to locate the claims in his own name.

Nolan, a colocator with Hubble as to three of the six subject claims, testified that he had been one of the parties along with Hubble and others, in locating the said three claims during the years 1938 to 1943; that he had difficulty in remembering but as to work done "we made a cut on the top of a hill, probably six feet deep . . . we were just prospecting"; that the work done by Hines was the first work he had seen done upon the ground; and that he did not know what Hubble had done. Nolan further testified that he had participated in the leasing discussion between Hines and Hubble; that

Hines came to him and told him that he did not believe their claims upon the ground were good for lack of the necessary discovery and assessment work; that he (Hines) would not sign a lease to the claims for that reason; that he believed the ground to be open for location; that he (Hines) would cooperate with Hubble, Nolan et al., in relocating the claims, and if not, he planned to file upon the claims in his own right; that following this conversation with Hines he gave to Hines his quitclaim deed to his rights in the claims in return for Hines' promise to associate him in the Hines' development of the claims. Kearney, one of the lessors, testified in the same vein as Nolan.

Plaintiffs offered evidence that Hines, between September 22, 1952, and April 30, 1954, filed the six claims upon which plaintiffs' appeal is based; that during this time he was actively working upon the ground and had expended considerable money in development work; that during this same period of time Mina I. Johnson, who does not appeal, filed her claim upon the ground adjoining the Hines claims which, in its entirety, overlays a portion of the ground claimed by the Hubble group under one or more of the six claims alleged. Plaintiffs offered their proof of discovery, location and assessment work. The Wuertzs acquired their interest in the claims by way of conveyance from the plaintiffs Hines. Plaintiffs offered evidence that they had remained in peaceful possession of the subject claims from the dates of their filing until June 1st, 1954, at which time Hubble served upon them his notice that they vacate said claims immediately.

By way of defense, Hubble sought to show that Kenneth J. Hines had gone into possession of the claims which Hines and Wuertz now claim, under a lease from Joseph H. Hubble et al., and that therefore plaintiffs were estopped to prove their title under the familiar rule that a tenant is estopped to deny the title of his landlord, and by the familiar rule that a person who knows that a mining claim is in the possession of another, and that it has been located by him, cannot, in good faith, make a claim of location thereon. Defendants offered in evidence the written document of lease, previously described, which had been drawn up and signed by the parties indicated, excepting the signatures of the Hineses and Kinney

Plaintiffs objected to the reception of this document in evidence, relying on the statute of frauds (Civ. Code, § 1624).

It was received in evidence and the court held that the lease was taken out of the statute of frauds by part performance on the part of plaintiffs, i.e., Hines and Kinney going into possession of the ground plus payments made by Kinney to Hubble which are hereafter described; and that it also bore on the question of good faith of the plaintiffs.

Hubble testified in some detail that the discovery and location work had been done on the ground as to each of the claims in dispute; that he had recorded the necessary notices of proof of annual labor and that annual labor had been performed upon some portion of the claims in each required year in an amount that would suffice to preserve his rights in all of the claims; that the claims were grouped for the purpose of annual labor and that much of the work was in the construction of roads of access to the claims; that Hines did not ever state to him that he would not sign the lease nor that he did not believe that the Hubble group had a valid claim to the ground nor that he considered the ground open for location nor that he proposed an association of all the parties in relocating and developing the claims nor that, if the group could not work together he (Hines) planned to file upon the claims in his own right, until after he had, in fact, filed on said claims; and that the persons, other than himself, named in the lease agreement, were so named only as promoters.

Kinney testified that he and Hines had an oral agreement that they would work the subject ground as equal partners under the purported lease; that he did not participate in any discussion of leasing with the lessors; that he was never asked to sign the lease but had had it in his possession "until recently" and believed it had been delivered to him by Mr. Hines; that he first went upon the ground within a month of June 3, 1952 (the date of the instrument); that he was, at various times, working upon the ground during the period between the latter part of June and sometime in September, 1952; that he had from one to three men working there at different times; that under the rental agreement he and Hines were to pay either one hundred or two hundred dollars per month; that he paid that amount of rental himself "for a couple of months" and that Hines was to reimburse him as to one-half of the rent, but that Hines never did; that later the rent was reduced to fifty dollars a month and then finally to twenty-five dollars a month; that Hines never did contribute either financially or physically at any time to their operation; that he had notice from Hines at one time that Hines was

terminating their working agreement; and that their agreement then ''just more or less died a natural death.''

Copies of original notices of location, duly recorded, were introduced in evidence on behalf of the defendants. Proof of annual labor bearing recordation marks for the years 1938 through 1954 were introduced into evidence, excepting the years 1939, 1940 and 1941, and in certain instances moratorium affidavits were recorded in lieu of the proofs of annual labor in the years in which the same was permissible.

On May 12, 1954, Hines entered into a contract with defendant Chemical Plant Food Corporation wherein said defendant undertook to take certain ores from the claims on a royalty basis. On July 25, 1954, Mr. Hines died. In August, 1954, Hubble padlocked the existing way of travel leading into the area in which the claims lie. On February 3, 1955, performance under the Hines Chemical Plant Food Corporation contract having been terminated, Mrs. Hines, the widow, filed her complaint in this action as indicated.

The court filed a written memorandum opinion indicating that Kenneth J. Hines entered upon the mining claims in question pursuant to a lease with defendants and others which lease, although not signed by Hines or his associate Kinney, was nevertheless partially performed on his part by the payment of rent to Hubble pursuant to the terms of the lease; that his successors in interest were therefore estopped to deny Hubble's title, citing *Storrs* v. *Belmont Gold Mining & Milling Co.,* 24 Cal.App.2d 551 [76 P.2d 197]; and *Pease* v. *Johnson,* 106 Cal.App.2d 449 [235 P.2d 229]. It further found that the defendants failed to comply with the mining statute in respect to the discovery and annual assessment work in all respects, and therefore their claims were open for location by plaintiff Johnson and, she not being estopped, was entitled to locate a valid claim. Judgment was entered as indicated. More formal findings were entered in which the same conclusion was reached. Judgment was entered accordingly.

Plaintiffs claim that the trial court's ruling that plaintiffs were estopped to assert the statute of frauds (Civ. Code, § 1624) against defendants' evidence of a contract for the lease of real property not evidenced by a writing signed by the party to be charged was erroneous. That section provides that an agreement for the leasing for a longer period than one year is invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to

be charged. Plaintiffs rely on such cases as *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154] ; *Mason* v. *Home Ins. Co. of New York,* 10 Cal.App.2d 696 [52 P.2d 491] ; and *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623 [220 P.2d 737], as establishing the rule of equitable estoppel to, rely on the Statute of Frauds. It was there held that before the doctrine would apply it must appear that plaintiff had been placed in such a changed position that to allow defendants to assert the statutory defense would be to work an unjust and unconscionable loss upon plaintiffs. The claim here is that there was no writing signed by plaintiffs and no showing of a change of position by defendants in reliance upon the lease, no unconscionable loss to defendants or unjust enrichment to plaintiffs, and that to estop plaintiffs to assert the statutory defense is to aid the defendant Joseph H. Hubble in the perpetration of a fraud, i.e., leasing the real property in which he did not have the interest he professed to have.

Although in dispute, there is evidence that the written lease, signed by the lessors, was accepted by Hines and Kinney, the lessees, and they went into possession under it, paid rent under its terms and later, under an oral agreement, paid a reduced amount. The lease agreement was manually delivered to lessors and was retained in their possession. They went into possession of the property on the date of the lease agreement.

Similar facts were considered in *Munford* v. *Humphreys,* 68 Cal.App. 530, 535 [229 P. 860], where it was held that it is not essential to the validity of a lease for the purpose of binding the lessee that it be signed by him provided he accepts the lease and acts thereunder, which exception is generally shown by taking possession or by the payment of rent; that a lease must be signed by the lessor, but need not, as a general rule, be signed by the lessee if accepted by him, as his acceptance of the lease not only binds him but the lessor as well and obviates the unilateral character of the instrument; and that to accept a written lease is to consent to the terms thereof, and the physical taking possession or retention of the instrument is merely evidence of such acceptance or consent. There is sufficient evidence to show that the lease was in effect and plaintiffs were in possession of the property under it during the time the Hineses attempted to establish their own title thereto by filing their own location notices. The lease was properly received in evidence.

Under the circumstances related there is sufficient evidence

to support the finding that the Hineses were estopped from claiming these mining claims in their own name (*Brown* v. *Murphy,* 36 Cal.App.2d 171 [97 P.2d 281] ; *Pease* v. *Johnson,* 106 Cal.App.2d 449, 452 [223 P.2d 229].)

There was a conflict in the evidence as to whether the necessary work was or was not done upon the claims by Hubble. Defendants offered exhibits and testimony showing that discovery, location, and annual work had been completed. ■ The burden of proof rested upon the plaintiffs to show that their title was superior to that of the defendants and they must recover upon the strength of their own title and not upon the weakness of the defendants' title. (*Pease* v. *Johnson, supra.*)

Plaintiffs concede the basic rule of law that a tenant may not deny the title of his landlord but contend that under the facts of this case an exception to that rule arises, citing *Kearney Inv. Co.* v. *Golden Gate Ferry Co.,* 198 Cal. 560 [246 P. 322] ; and *Yuba River Sand Co.* v. *City of Marysville,* 78 Cal. App.2d 421 [177 P.2d 642].

In the instant case there is no direct finding of fraud on the part of the lessors or other reasons which would bring plaintiffs within the exception. These appealing plaintiffs, upon whom the burden rested, did not show superior title in themselves. The motion for a new trial and to vacate the judgment was properly denied.

The portion of the judgment from which this appeal was perfected is affirmed.

Barnard, P. J., concurred.