[Civ. No. 19983.    First Dist., Div. Two.    Feb. 16, 1962.]

LELAH MULLER, Plaintiff and Respondent, v. E. HALLENBECK, Defendant and Appellant.

William J. Scammon for Defendant and Appellant.

Charles Reagh for Plaintiff and Respondent.

KAUFMAN, P. J.—This case is but another chapter in the long and complex history of the relations of the respondent, Lelah Muller, and her former husband, William Muller.[1] The precise question here presented has never been litigated in the prolix and proliferous prior proceedings. A detailed exposition is necessary for an understanding of the issue.

On July 26, 1955, respondent, Lelah Muller, filed this action to quiet title to lots 6 and 7, block 46, of the Granada Subdivision in San Mateo County, alleging that the property had been part of the community property at the time of her marriage to William Muller who was named as defendant with Uda Datlow and several Does. Thereafter, on October 24, 1955, the appellant, E. Hallenbeck, was brought in as a party, and on October 27, 1955, filed his cross-complaint to quiet title to lots 6 and 7 and the northeasterly portion of lot 5, asserting that he was the owner of the parcels of land in question by a grant deed from Uda Datlow.

William Muller admitted his marriage to the respondent, the final decree of divorce entered on December 8, 1954, *nunc pro tunc* as of September 22, 1953, and disclaimed any interest in the property in favor of Hallenbeck. Thereafter, on the motion of William Muller, the court dismissed respondent's action for failure to prosecute within five years from the commencement thereof, pursuant to section 583 of the Code of Civil Procedure. The matter thereafter went to trial on the issues raised by the cross-complaint, namely, the rights of the various parties to lots 6 and 7 and the northeasterly portion of lot 5. At the trial, respondent, by her attorney, announced in open court that she did not care to press her defense or seek any relief as far as lots 6 and 7 were concerned.

The trial court found: that respondent and William Muller were married on January 22, 1944, and continued to be husband and wife until September 22, 1953; that title to all the lands described derived from the United States by *mesne* con-

---

[1]See *Muller* v. *Muller*, 141 Cal.App.2d 722 [297 P.2d 789]; *Muller* v. *Reagh*, 148 Cal.App.2d 157 [306 P.2d 593]; *Muller* v. *Reagh*, 150 Cal. App.2d 99 [309 P.2d 826]; *Muller* v. *Muller*, 156 Cal.App.2d 623 [320 P.2d 205]; *Muller* v. *Reagh*, 170 Cal.App.2d 151 [338 P.2d 601]; *Muller* v. *Reagh*, 173 Cal.App.2d 1 [343 P.2d 135]; *Muller* v. *Muller*, 174 Cal.App.2d 517 [345 P.2d 29]; *Muller* v. *Robinson*, 174 Cal.App.2d 511 [345 P.2d 25]; *Muller* v. *Municipal Court*, 176 Cal.App.2d 156 [1 Cal.Rptr. 207]; *Muller* v. *Reagh*, 179 Cal.App.2d 814 [4 Cal.Rptr. 147]; *Muller* v. *Muller*, 179 Cal.App.2d 815 [4 Cal.Rptr. 419]. There are also at this time numbers 20403 and 20399 pending in this court; numbers 14633, 18941, 19565 and 19604 have heretofore been dismissed.

veyances to one Rebecca Aronov, who acquired title on or about April 5, 1946; that William Muller held a general power of attorney from Rebecca Aronov which was of record in San Mateo County on and prior to August 8, 1949; that on August 8, 1949, Rebecca Aronov, by her attorney in fact, William Muller, deeded to Uda Datlow lots 6 and 7 and the northeasterly portion of lot 5; that this deed was furnished by William Muller and was actually never seen by Uda Datlow; that Uda Datlow paid nothing whatever for this conveyance as he had previously agreed to take and hold the title as an accommodation to William Muller, who had told Datlow that he owned the property but that the respondent wanted to take everything away from him; and that Muller wanted Datlow to take over the title to the property because of the relations between Muller and the respondent.

The trial court also found that Datlow held title to these lands entirely as an accommodation for Muller and never claimed any right whatever; that on Muller's request, Datlow signed two deeds in blank, and delivered them to Muller with the name of the grantee left blank; that on June 29, 1954, these deeds were filled in with the name of appellant Hallenbeck as grantee and an acknowledgement to the signature of Uda Datlow was procured although Datlow did not go before a notary at any time and the deeds were placed of record.

The trial court further found that on April 23, 1952, William Muller, by an unacknowledged deed, which was however signed by him and delivered to Lelah Muller, conveyed to her all of lot 5; that on May 26, 1952, Lelah Muller brought suit to prove the execution and delivery of this deed in action No. 58211. Judgment was entered on May 18, 1954, proving said deed and quieting title to all of lot 5 in Lelah Muller as against William Muller. (This judgment was subsequently affirmed by this court in *Muller* v. *Muller*, 141 Cal.App.2d 722 [297 P.2d 789] ; see also *Muller* v. *Reagh*, 148 Cal.App.2d 157 [306 P.2d 593].)

From the above facts, the trial court concluded that title to lots 6 and 7 should be quieted in the appellant Hallenbeck as against Lelah Muller; and that as to the northeasterly portion of lot 5 conveyed to Hallenbeck by the deed from Uda Datlow, appellant Hallenbeck held only the bare legal title, naked of any right or interest, and that he should be required to deed to the respondent all of his right, title and interest in

that portion of lot 5, with a specific covenant against the acts of the grantor.

From the judgment duly entered, Hallenbeck appeals contending that the northeasterly portion of lot 5, as well as the respondent's claim thereto, were never really in issue; that the uncontroverted evidence indicated that he was a bona fide purchaser for value without notice; and that the record does not support the trial court's finding that William Muller deeded lot 5 to the respondent and that thereafter, this deed was proved and respondent's title to all of lot 5 quieted as against William Muller. There is no merit in any of these contentions.

We turn first to the appellant's arguments that the disputed portion of lot 5 was not involved in this litigation and that there was no evidence to support findings 1 and 2, namely, that on April 23, 1952, William Muller delivered an unacknowledged deed to lot 5 to the respondent; that such deed was subsequently proved and respondent's title to lot 5 quieted against William Muller. As described above, respondent's complaint [which was subsequently dismissed], related only to lots 6 and 7; appellant's answer and cross-complaint specifically sought to quiet title to lots 6 and 7 and the portion of lot 5 which he had acquired by his June 29, 1954, deeds from Uda Datlow. Although the pretrial order was formulated before the dismissal of the respondent's complaint, we see no inconsistencies between the issues raised by the pretrial order and the cross-complaint. As to the prior quiet title action between respondent and William Muller (No. 58211, affirmed in 141 Cal.App.2d 722 and 148 Cal.App. 2d 157, etc.), the entire record of this matter was admitted into evidence below. Furthermore, we may take judicial notice of our decision in the prior quiet title suit (*Muller* v. *Reagh,* 148 Cal.App.2d 157, 161 [306 P.2d 593]). Although the appellant's first two contentions appear to us to be highly frivolous (*Tomales Bay etc. Corp.* v. *Superior Court,* 35 Cal.2d 389 [217 P.2d 968]), we do not think the appellant should be penalized therefor since he has been involved in an unfortunate mess, not entirely of his own making.

We turn now to the main issue before this court which is, whether the evidence sufficiently supports the findings and conclusions of the trial court that the appellant was not a bona fide purchaser of the northeasterly portion of lot 5 conveyed to him in the deed of June 29, 1954, signed by Uda Datlow.

The record reveals the following: Appellant testified that he lived in San Francisco and that in June of 1954, he bought lots 6 and 7 and the disputed portion of lot 5 from Uda Datlow, as an investment. He began negotiating for the property in March 1954, and closed the deal with a deposit of $200 in cash in April. However, appellant never saw Uda Datlow and did not deal directly with him. All the negotiations and the entire transaction were handled for the appellant by real estate broker, William Muller, who never revealed his interest in the property. Appellant had known Muller for 8-10 years, had previous dealings with Muller, but did not know that Muller was married. Appellant trusted Muller's integrity, paid the $1,500 purchase price for all the parcels of property to Muller in cash when Muller informed him that Datlow wanted cash. As the appellant had some difficulty collecting so much cash, he gave Muller $200 in April and the rest in June, all in ten and twenty dollar bills. He had the balance of the purchase price a week or so after he had made the $200 deposit but he could not get hold of Mr. Muller until June 28 to pay the balance. In the interim, the appellant stored the cash in a wooden box in his garage. He explained that he had never had a bank account in his life except a checking account with American Trust; that he had bought bank money orders but did not believe in cashier's checks; that he had acquired most of the $1,500 cash from a Mr. Bob Cockley, now deceased, to whom he had loaned the money.

The judgment in action No. 58211 quieting title to all of lot 5 in the respondent was entered on May 18, 1954. The deeds from Uda Datlow to the appellant were dated June 29, 1954. They were recorded on October 17, 1955.[2] Appellant did not request a title search of the property until October 1955. Appellant explained the delay in the recording as follows: "I was in the litigation of an estate with my brother and I didn't do that for the simple reason that they would have tried to claim that the money was the estate money that it was purchased by—with, rather. That's the reason I didn't record the deed until I was through with the litigation with my brother." In the litigation with his brother, appellant was assisted by William Muller. Appellant further stated that since his purchase of lots 6 and 7 and the portion of lot 5 in 1954, he had paid the taxes thereon. He produced a tax

[2]That is, after the filing of the respondent's complaint in this action. The order bringing appellant into this action was made on October 24, 1955, and his cross-complaint filed on October 27, 1955.

receipt covering lots 6 and 7, indicating that these had been sold to the state for the delinquent 1954 taxes and subsequently redeemed, but could not find anything relating to lot 5. Subsequently, on cross-examination, he indicated that he did not know whether he had paid any taxes on the portion of lot 5. The disputed portion of lot 5 is the northeasterly part, a little over half of the lot. The garage is located on this portion, while the house is on the remaining 50 by 25 feet. Appellant was not interested in the house and never inquired as to whether the lot could be divided in this fashion.

However, immediately after the purchase of the property, he gave William Muller license to use the garage, and a power of attorney. When questioned about the purpose of the power of attorney, appellant replied: ''That was my business, why I wanted to do that.'' When further asked as to what Muller was to do with the power of attorney, appellant replied: ''Well, if he wanted to sell those lots for me, he could have sold them. That's the reason I gave him power of attorney.'' Appellant's power of attorney to Muller was revoked on October 24, 1957. As to his ''other dealings'' with Mr. Muller, appellant indicated that these were not real estate matters, although Muller had surveyed a lot for him.

Appellant then rested his case and the respondent called Uda Datlow. Datlow testified he never knew or met Rebecca Aronov but did know William Muller; that a long time ago (he could not remember whether it was before or during the second World War), he had a conversation with William Muller about real property in San Mateo County. At that time, Muller told him he wanted to protect the San Mateo property from his wife because she wanted to take everything away from him. Datlow signed the deeds in blank and handed them back to Muller. Datlow never paid any money for the properties or claimed any interest therein; never saw the deed by which Muller, as attorney in fact for Rebecca Aronov, deeded the property to him. Datlow had never seen appellant Hallenbeck in his life.

Respondent then called her present husband, Mr. Reber, who testified that he was with her in September 1954, when she took possession of all of lot 5, including the garage on the disputed portion. Respondent, or one of her tenants, has been in possession ever since. The part of the lot assessed to Datlow had been sold to the state for taxes, as well as the remainder. He redeemed both of these on behalf of the respondent and ever since has paid all the taxes due on the

entire lot since September 3, 1954. Respondent then put into evidence the entire record in superior court action No. 58211, whereby a deed to her from Muller to all of lot 5 was established as authentic and which quieted title in her as against Muller.[3]

In view of the above evidence, we can only conclude that the trial court properly concluded that the appellant was not a bona fide purchaser of the disputed portion of lot 5 and that there is ample evidence to support its findings. As appellant sought to quiet title, he had the burden of proving his status as a bona fide purchaser for value (*Hines* v. *Hubble,* 144 Cal.App.2d 830 [301 P.2d 592]). A bona fide purchaser is one who can prove possession of his grantor, the purchase of the property, and the payment of the purchase money in good faith and without notice, actual or constructive (*Kress* v. *Tooker-Jordan Corp.,* 103 Cal.App. 275, 282 [284 P. 685]). Here, the uncontradicted evidence established that appellant's grantor, Datlow, only took title as a convenience to William Muller, and was never in possession. The uncontroverted evidence also established that the deed to Datlow was also executed by William Muller, who at that time held a general power of attorney from Rebecca Aronov.

Appellant argues that the payment of the $1,500 and his freedom from notice is established because his testimony must be taken as true and uncontradicted. Although there is no contradiction of his testimony, neither was there corroboration. Appellant apparently chose not to call William Muller to whom the $1,500 was paid and as the payment was made in cash [at Muller's request], appellant could offer no documentary proof. Evidence is to be estimated not only by its own intrinsic weight but also according to the evidence which it is in the power of one party to produce and of the other to contradict (Code Civ. Proc., § 2061). Uncontradicted and unimpeached testimony of a witness *which is not inherently improbable* cannot be arbitrarily disregarded and should be accepted as true by the trier of fact *where it is not found that the testimony was false* (*Mears* v. *Mears,* 180 Cal. App.2d 484, 501 [4 Cal.Rptr. 618]).

Under the circumstances here presented, the trial court could reasonably conclude that appellant's collection of

---

[3]This was one of the judgments affirmed in *Muller* v. *Muller,* 141 Cal.App.2d 722 [297 P.2d 789]; see also *Muller* v. *Reagh,* 148 Cal.App. 2d 157 [306 P.2d 593].

most of the cash from a dead debtor, keeping it in a wooden box in his garage for some time, buying investment property from an unseen grantor, buying the major portion of lot 5 without the house, without a title search, was inherently improbable. ▪▪▪ In view of William Muller's key role in the various conveyancing transactions from Aronov to Datlow and Datlow to Hallenbeck, as well as the appellant's long acquaintance with Muller and his reluctance to enlighten the court of the various transactions and his dealings with Muller, the appellant's refusal to explain the reasons for the power of attorney, the fact that the deeds signed by Datlow many years ago were filled in with appellant's name as grantee and dated after the lower court had entered its decree quieting title to all of lot 5 in the respondent as against William Muller, and that these deeds were not recorded until just before the appellant entered this case, the trial court could easily believe that appellant was not acting in good faith but merely functioning as an *alter ego* for William Muller.[4] The trial judge is the arbiter of the credibility of witnesses. A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving wrong coloring to material facts. Where conflicting inferences may be drawn from testimony, we are conclusively bound by the findings of the trial court (*La Jolla Casa deManana* v. *Hopkins*, 98 Cal.App.2d 339, 345 [219 P.2d 871]).

In view of the foregoing, the judgment quieting title to lots 6 and 7 in the appellant and quieting title to the disputed portion of lot 5 in the respondent is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

---

[4]This conclusion is amplified by appellant's assertion in his opening brief that if the judgment is correct and he holds only the bare naked title ". . . such could only be held for the benefit of one William Muller and not of respondent."