[No. A028568. First Dist., Div. Four. Sept. 30, 1986.]

NANCY BELL LEACH, Plaintiff and Appellant, v.
HOME SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

[No. A029607. First Dist., Div. Four. Sept. 30, 1986.]

NANCY BELL LEACH, Plaintiff and Respondent, v.
JAMES R. PRESCOTT et al., Defendants and Appellants.

COUNSEL

Douglas W. Oldfield, Thompson & Hubbard and Thompson, Hubbard, Schwartz, Ometer & Gray for Plaintiff and Appellant and Plaintiff and Respondent.

Stephen W. Dyer, Horan, Lloyd & Karachale, Alexander C. Crosby, Horan, Lloyd, Karachale & Dyer, Stanford H. Atwood, Jr., Robert Knox, Kevin L. Anderson and Atwood, Hurst, Knox & Anderson for Defendants and Appellants and Defendants and Respondents.

OPINION

CHANNELL, J.—In appellant Nancy Bell Leach's action to remove a cloud on title to real property, the trial court granted summary judgment in favor of respondents James and Kathleen Prescott, Home Savings and Loan

Association, and others.[1] The trial court also denied respondents' motions for attorneys' fees.

In consolidated appeals, Leach challenges the summary judgments, while the Prescotts challenge denial of their motion for attorneys' fees. In the first appeal, Leach contends that the trial court erred (1) by finding that the lenders—Home Savings and the Prescotts—had no legal duty to investigate a probate court file; and (2) by granting summary judgment when disputed material facts existed about whether the lenders had knowledge of Charles Bell's lack of authority to encumber trust property. In the second appeal, the Prescotts contend that, as prevailing parties, they were entitled to attorneys' fees even though Leach was not a signatory to the contract on which the action was based. We find no merit in either appeal and affirm the judgments and order.

## I. FACTS

At Alma Bengard's death in 1964, a testamentary trust was created for the benefit of her daughter, June Bengard Bell. June's two children, defendant Charles Bell and plaintiff-appellant Nancy Bell Leach, are entitled to the remainder of June's trust on her death, if there are trust assets remaining at that time. Under the terms of the trust, the trustee may encumber trust property.

In 1971, a former trustee used part of the trust assets to purchase a residence on Hawthorne Street in Salinas for June's use. June holds a life estate in the residence and she continues to live there. The residence and some cash form the entire res of the trust.

In 1973, the former trustee resigned and the court appointed June's son, Charles Bell (Bell), as successor trustee. All trust assets were transferred to Bell, including the trustee's deed to the residence. In 1974, Bell prepared his first annual accounting for the trust.

By April 1975, the trust cash was almost exhausted. In May 1975, the probate court entered an order settling the second and final accounting of

---

[1] In the first appeal (No. A028568), the respondents fall into two classes. Those who are parties to the 1976 first deed of trust are Home Savings and Loan Association and Serrano Reconveyance Company, referred to collectively as "Home Savings." Those who are parties to the 1980 second deed of trust are James and Kathleen Prescott; Prospect Investment; Henry and Barbara Volkman; Karel and Jitka Cymbal; Victoria Hardtke; John and Judith Freire; Lincoln Trust Company; Pelkins Pacific, Inc.; and Santa Clara County Title Company, referred to collectively as "the Prescotts." The Prescotts and the other parties to the 1980 second deed of trust are the appellants in the second appeal (No. A029607).

Bell as successor trustee. An attorney testified at a deposition that this final accounting was prepared in order to terminate June's trust so that she could become eligible to receive government assistance. He testified that the Salinas residence was not included in the list of trust assets and that Bell was intended to be discharged as trustee of the trust funds, but not the Salinas residence.

The May 1975 order provided that "after distributing the balance of the funds in this Trust, . . . CHARLES R. BELL is discharged as Trustee for JUNE BENGARD BELL." Leach believes that Bell distributed the balance of the trust funds within 30 days after entry of this order. She also contends that the order was self-executing. In essence, she believes that the order effectively discharged Bell as trustee in 1975. At a deposition, Bell testified that he had not distributed the remaining trust funds and that he thought he was still the trustee of June's trust. His attorney agreed with this conclusion at his own deposition. No final order discharging Bell as trustee was ever filed, nor was the 1975 order ever recorded. Bell, as trustee for June, remains the legal title holder of the Salinas residence.

In 1976, Bell, purportedly acting in his capacity as trustee, borrowed $33,600 from respondent Home Savings and Loan Association. The loan officer stated that she reviewed the trust instrument, a title report, and 1973 documentation of Bell's authority to act as trustee before approving the loan. Bell gave the lender a promissory note, secured by a first deed of trust against the Salinas residence. Respondent Serrano Reconveyance Company was trustee of this deed of trust. Bell used part of the proceeds of this loan to pay off an existing Wells Fargo Bank deed of trust on the Salinas property. The record does not reveal what Bell did with the remaining loan proceeds.[2] In 1977 and 1980, foreclosure proceedings were instituted against the Salinas residence in conjunction with this deed of trust, but each proceeding was subsequently rescinded. In 1981, Leach estimated that the balance due on this loan was $31,500.

In 1980, Bell, again purporting to act as trustee, borrowed a total of $42,000 from respondents James and Kathleen Prescott, Prospect Investment, Henry and Barbara Volkman, Karel and Jitka Cymbal, Victoria Hardtke, John and Judith Freire, and Lincoln Trust Company (as trustee for three individual pension plans). Bell gave them a promissory note, secured by a second deed of trust against the Salinas residence. Harry Cappel & Company, a real estate broker, arranged the loan. Cappel stated that, before approving the loan, he reviewed trust accountings and a preliminary title report showing Bell, acting as trustee, as legal title holder of the Salinas

---

[2]It appears that Bell never filed an accounting after May 1975.

residence. Respondent Santa Clara County Title Company was the trustee on the deed of trust. Bell used part of the proceeds of this loan to pay off yet another loan. Again, the record is silent on Bell's use of the remaining new loan proceeds. In 1981, Santa Clara County Title Company transferred its interest in the deed of trust to successor trustee and respondent Pelkins Pacific, Inc., whose president is Harry Cappel. The same year, Leach estimated that the balance due on this loan was $41,500.

In early 1981, the holder of yet another lien against the Salinas residence instituted foreclosure proceedings. At this time, Leach discovered that Bell had repeatedly mortgaged the Salinas residence. In May 1981, she filed this action against Bell, the respondents, and others in order to clear title to the Salinas property by having the various deeds of trust declared void. She also applied for and obtained a preliminary injunction halting the foreclosure proceedings. In July 1981, the trial court dismissed the action against Santa Clara County Title Company. Two months later, a default judgment entered against Charles Bell.[3]

In the portion of the action directed against the respondents—trustees and beneficiaries of the first and second deeds of trust—Leach contends that Bell had no authority to act as trustee at the time of the 1976 and 1980 loans. Based on information and belief, she also contends that each respondent had actual or constructive notice of this fact and that none were bona fide encumbrancers. The respondents filed motions for summary judgment in 1984. Each respondent[4] filed a declaration denying any actual or constructive knowledge of Bell's purported lack of authority to act as trustee at the time that the loans were made. Bell also testified at a deposition that he did not know most of the respondents. At her deposition, Leach stated that she had no actual or personal knowledge that the respondents knew that Bell had no authority to act as trustee when the loans were made.

After a hearing on the motions for summary judgment, the trial court found that Leach did not substantiate her claim that the respondents had actual knowledge of Bell's discharge as trustee, assuming that he was actually so discharged. It also found that Leach must establish the respondents' actual knowledge of this fact in order to prevail. (Civ. Code, § 2281.) The trial court granted the motions and entered judgments accordingly. Leach filed a timely notice of appeal from the judgments.

---

[3] Bell "disappeared" for approximately two years during the pendency of this action. In 1983, he filed for bankruptcy.

[4] Each respondent filed such a declaration except Santa Clara County Title Company, against which the action had already been dismissed, and Serrano Reconveyance Company, trustee for Home Savings, which did file a declaration.

After summary judgment, the Prescotts and Home Savings petitioned the trial court for a declaration that, as prevailing parties, they were entitled to receive attorneys' fees from Leach. The trial court denied these motions because Leach was not a signatory to the deeds of trust and notes that included attorneys' fees clauses. The trial court found that the Prescotts and Home Savings could seek these fees from either the trust or Bell, in a separate proceeding. The Prescotts[5] filed a timely notice of appeal from the order denying the motion for attorneys' fees.[6]

## II. Lender's Duty to Investigate

In her appeal, Leach first contends that the trial court committed reversible error when it held that the lenders had no duty to investigate the public records contained in the probate court file. In essence, she argues that Home Savings and the Prescotts had constructive notice of the 1975 order, which she contends reveals that Bell had no authority to act as trustee.

Civil Code section 2281[7] makes binding any bona fide transaction between a discharged trustee and one who has no *actual knowledge* of the discharge. Under this provision, constructive knowledge of the sort Leach contends that the lenders had would not be sufficient to void the transaction. Leach argues, however, that the "bona fide transaction" statutory language should be interpreted to read "bona fide purchaser." A bona fide purchaser is held to both actual and constructive notice (see *Hansen* v. *G & G Trucking Co.* (1965) 236 Cal.App.2d 481, 498-499 [46 Cal.Rptr. 186]; *Muller* v. *Hallenbeck* (1962) 200 Cal.App.2d 366, 373 [19 Cal.Rptr. 251]; see also Black's Law Dict. (4th ed. 1968) p. 224, col. 1); therefore, she contends that, using her interpretation, section 2281 does not validate the subject transactions if Home Savings and the Prescotts had even constructive notice of Bell's lack of authority to act as trustee. (See §§ 18, 19.) However, we do not agree that a "bona fide transaction" within the meaning of section 2281 is a transaction involving a bona fide purchaser.

A bona fide transaction is a transaction which the parties operate "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud."

---

[5]The Prescotts and the other parties to the 1980 second deed of trust (see fn. 1, *ante*) appealed this ruling, but Home Savings and Loan Association and Serrano Reconveyance Company did not.

[6]An order denying a motion for attorney's fees is appealable. (Code Civ. Proc., § 904.1, subd. (b) [order after judgment]; *Henneberque* v. *City of Culver City* (1985) 172 Cal.App.3d 837, 841-842 [218 Cal.Rptr. 704] [severable order determining matter collateral to main action].)

[7]Civil Code section 2281 provides, in part: "[A]ny bona fide transaction entered into with [a discharged trustee] by any person acting without actual knowledge that his . . . office has been vacated . . . shall be binding on all parties."

All statutory references are to the Civil Code, unless otherwise indicated.

(Black's Law Dict., *supra*, p. 223, col. 2.) This definition of "bona fide" is consistent with other definitions of the term, used in other contexts. (See, e.g., *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 920-922 [80 Cal.Rptr. 89, 458 P.2d 33] [bona fide dealer means dealer who is honest or reliable]; *Raysinger* v. *Peoples Inv. & Loan Assn.* (1973) 36 Cal.App.3d 248, 251 [112 Cal.Rptr. 163] [bona fide loan is one in which principal amount is what it purports to be]; *Helton* v. *Stewart* (1961) 198 Cal.App.2d 114, 120 [17 Cal.Rptr. 524] [bona fide sale is actual sale made in good faith, for value, without fraud].) To interpret a "bona fide transaction" as one in which no fraud, bad faith, or collusion is involved is also consistent with early case law that limits the showing a purchaser must make in order to validate a transaction with a trustee. (See *Purdy* v. *Bank of America N. T. & S. Assn.* (1935) 2 Cal.2d 298, 303-304 [40 P.2d 481]; see also Stats. 1961, ch. 1042, § 1, p. 2725 [amending § 2281].) Finally, this interpretation does not create a conflict between the "actual knowledge" language of section 2281 and the constructive notice provision typically read into statutes referring to a bona fide purchaser. (See §§ 18, 19, 2281.) For all these reasons, we find that section 2281 makes binding any bona fide transaction—that is, any transaction entered into without fraud, bad faith, or collusion—between a discharged trustee and a purchaser without actual knowledge of the fact of discharge.

Leach's interpretation of section 2281 is not the only flaw in her reasoning, however. Even if we adopted her interpretation, she has not established that actual notice of the 1975 conditional order would have revealed to Home Savings or the Prescotts that Bell was no longer trustee. ██ As the trial court indicated, in practice the discharge of a trustee occurs after the trial court signs a final discharge order. No such order was ever filed in this case. The trial court stated that if it had looked at the order, it would have assumed that Bell was still trustee. This is a reasonable interpretation of the provisions of the order. As Leach is unable to establish that the 1975 order would provide anyone with notice of Bell's lack of authority to act as trustee, it could not give Home Savings or the Prescotts constructive notice of this "fact" even if the lender's duty of inquiry (see § 19) were extended to the 1975 order. In light of these findings, we need not address the other contentions Leach raises regarding notice.[8]

### III. Knowledge of Lack of Authority

Leach also contends that the trial court erred in granting summary judgment when disputed material facts existed on the question of whether the

---

[8]For example, Leach contends that a commercial lender ought to be held to a higher standard of knowledge and notice than other lenders. However, as neither constructive nor actual notice of the order would have revealed the "fact" that Bell was discharged, we need not address this question.

lenders had knowledge of Bell's lack of authority. Leach contends that she had not had adequate time to properly depose Bell and, thus, was not given a fair opportunity to establish a triable issue of fact.

When it appears from affidavits submitted in opposition to a motion for summary judgment that facts essential to justify opposition may exist, but cannot, for stated reasons, be presented at that time, the trial court must deny the motion or order a continuance to permit further discovery. (Code Civ. Proc., § 437c, subd. (h).) However, the trial court correctly found that Leach had an adequate opportunity to depose Bell on one of the three dates that he was disposed. Leach's counsel attended each of these depositions and examined Bell three times.

In addition, the only counterdeclaration Leach filed did not comply with the procedural requirements of section 437c of the Code of Civil Procedure. Opposing affidavits must be made on personal knowledge, must set forth admissible evidence, and must show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. (Code Civ. Proc., § 437c, subd. (d).) The only declaration filed in opposition to the motions for summary judgment was filed by Leach's attorney. The most cursory glance at this declaration reveals that it does not comply with these procedural requirements; it was not made on the basis of the attorney's personal knowledge and it does not include an affirmative statement that he is competent to testify to the matters stated in the affidavit. (*Ibid.*) The declaration also does little more than restate the allegations in the complaint. ▮ When, as here, the moving party shows by declarations that he is entitled to a summary judgment, the opposing party may not rely on the pleadings, but must make an independent showing that he or she has sufficient proof of the matters alleged to raise a triable issue of fact. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615]; *Orsetti* v. *City of Fremont* (1978) 80 Cal.App.3d 961, 966 [146 Cal.Rptr. 75].) The declaration's bare conclusions of law and restatement of the complaint's allegations are insufficient to establish a triable issue of fact. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1136-1137 [213 Cal.Rptr. 750].)

▮ The summary judgment procedure is drastic; any doubts about the propriety of granting the motions should be resolved in favor of the motions' opponent. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 593 [184 Cal.Rptr. 98].) ▮ However, Leach did not provide any *evidence* to support the allegations in the complaint. She had ample opportunity to obtain information from Bell during

his three depositions. As there is no triable issue of fact, the trial court had no choice but to grant the motions for summary judgment. (Code Civ. Proc., § 437c, subd. (c); see *Girard* v. *Ball* (1981) 125 Cal.App.3d 772, 780 [178 Cal.Rptr. 406] [summary judgment stands if affidavits state facts sufficient to sustain it and counteraffidavits do not proffer competent and sufficient evidence to present triable issue of fact].)

 Finally, in her reply brief, Leach also suggests that Home Savings and the Prescotts had actual knowledge of Bell's lack of authority to act as trustee because Bell was not the trustee named in the trust instrument. However, this contention overlooks the declarations of the parties approving the two loans that they each obtained some proof of Bell's status as successor trustee before approving the loans. The loan officer for Home Savings reviewed both a title report and 1973 documentation of Bell's authority to act as trustee; the broker for the Prescott loan reviewed trust accountings and a preliminary title report showing Bell as title holder of the Salinas property in his capacity as trustee. Having obtained evidence of Bell's appointment as successor trustee and considering the state of the title at the time of the loans—title having been held in his name as successor trustee—we believe that the lenders satisfied their obligation to inquire into Bell's authority to encumber trust assets at the time of the loans. (See *Purdy* v. *Bank of America N. T. & S. Assn., supra,* 2 Cal.2d at p. 304 [limiting lender's duty to inquire]; *Huntoon* v. *Southern T. & C. Bank* (1930) 107 Cal.App. 121, 126-129 [290 P. 86] [no duty to inquire beyond determining whether trust instrument conveys power to trustee]; see also Bogert, Trusts and Trustees (2d ed. rev. 1980) ch. 42, Bona Fide Purchaser Rule, § 894, p. 238 [duty to examine trust instrument]; § 897, pp. 253-255 [only reasonable inquiry required; no duty to inquire arising from statements in recorded documents outside chain of title].) In addition, as Leach did not provide any evidence to support the allegations—made on the basis of information and belief—that the lenders had actual knowledge of the alleged fact that Bell was not trustee at the time of the loans, the trial court properly granted the motions for summary judgment. (Code Civ. Proc., § 437c, subd. (c); *Girard* v. *Ball, supra,* 125 Cal.App.3d at p. 780.)

## IV. ATTORNEY'S FEES

Finally, the Prescotts contend that, as prevailing parties in the litigation, they are entitled to have Leach pay their attorney's fees. (§ 1717.)[9] They

---

[9]Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded . . . to one of the parties, . . . then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees . . . . [¶] Where a contract

rely on their promissory note from Bell, providing: "Should suit be commenced to collect this note or any portion thereof, such sums as the Court may deem reasonable shall be added hereto as attorney's fees." In the second deed of trust, Bell agreed "to pay all costs and expenses, including . . . attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee [to the deed of trust] may appear. . . ." Leach counters that, as one who did not sign either the note or the deed of trust, she is not bound by their terms. The trial court ruled that, while section 1717 allows a nonsignatory to a contract "to recover attorney's fees for successfully *defending against*" a contract claim, the statute was "not intended to enlarge the class of persons who are liable on contracts." (Italics added.) The trial court also found that Leach, a beneficiary under the trust, could not be held personally liable for Bell's acts as trustee.

■ Without authorization by statute or contract, attorney's fees are ordinarily not recoverable as costs. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 127 [158 Cal.Rptr. 1, 599 P.2d 83]; Code Civ. Proc., § 1021.) (7) One purpose of section 1717 is to establish mutuality of remedy when a contractual provision makes recovery of attorney's fees available for only one party. (*Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at p. 128.) Thus, under section 1717, if Leach would have been able to recover attorney's fees from the Prescotts had she prevailed, they may recover fees from Leach when they prevail. (See *id.,* at p. 129; *Jones* v. *Drain* (1983) 149 Cal.App.3d 484, 488 [196 Cal.Rptr. 827].)

The Prescotts cite numerous cases in support of their contention that Leach would be entitled to recover fees from them had she prevailed. Of these cases, only a few address the issue of a nonsignatory's liability for attorney's fees pursuant to section 1717. (See *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d 124; *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503 [207 Cal.Rptr. 508]; *Jones* v. *Drain, supra,* 149 Cal.App.3d 484; *Wilhite* v. *Callihan* (1982) 135 Cal.App.3d 295 [185 Cal.Rptr. 215]; *Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552]; *Babcock* v. *Omansky* (1973) 31 Cal.App.3d 625 [107 Cal.Rptr. 512], overruled in *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 485 [144 Cal.Rptr. 474], but cited with approval in *Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at pp. 128-129.) None of these cases persuade us that Leach would be entitled to a fee award.

provides for attorney's fees, as set forth above, such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. [¶] Reasonable attorney's fees . . . shall be an element of the costs of suit. . . ."

*Reynolds* and *Babcock* involve a nonsignatory defendant's right to receive attorney's fees from a signatory plaintiff who would have received fees if the plaintiff had prevailed. In our case, signatory defendants seek fees from Leach, a nonsignatory plaintiff who would have no contractual or statutory right to receive fees if she had prevailed. The logic of *Reynolds* and *Babcock* does not apply in this different factual context.

*Wilhite* and *Saucedo* arise in the context of an action to prevent foreclosure for nonpayment of a loan. The cases hold that, in this situation, a non-signatory plaintiff is entitled to receive attorneys' fees, because, as a practical matter, he would have had to pay fees as part of the total debt that would have to be refinanced to avoid foreclosure. In both cases, the non-signatory plaintiff was a successor in interest to an original signatory of a loan; the real property that the plaintiff obtained was purchased subject to the loan agreement that included both a due-on-sales clause and an attorney's fees clause. There are differences between these cases and that of Leach. First, Leach is not a signatory's successor in interest; she is a beneficiary of a trust, the assets of which the signatory, acting as trustee, has encumbered. Second, *Wilhite* and *Saucedo* both base the right to recover fees on the "practical" impact of the plaintiff's act: that the plaintiff must pay attorney's fees because, if he or she had refinanced, rather than sued to avoid fore-closure, the plaintiff would have had to pay the lender the entire debt, including the attorney's fees that the defendant-lenders would include within the debt owed. Leach obtained an injunction to prevent foreclosure, not as an alternative to refinancing a loan, but because she believed that the contract underlying debt was void. As such, the practicalities present in *Wilhite* and *Saucedo* justifying an award of attorney's fees are not present in Leach's case.

Finally, *Jones* and *Manier* contain broad language to the effect that at-torney's fees should be granted when it would be inequitable to deny them. (*Jones* v. *Drain, supra,* 149 Cal.App.3d at pp. 489-490; *Manier* v. *Anaheim Business Center Co., supra,* 161 Cal.App.3d at p. 508.) These cases base their analysis of mutuality of remedy on an equitable estoppel argument: if one merely alleges a right to recover attorney's fees, one is estopped from contending that he or she could not recover them if the other party prevails and claims attorney's fees. The Prescotts urge us to adopt this view. This equitable estoppel theory was first announced in *Pas* v. *Hill* (1978) 87 Cal.App.3d 521 [151 Cal.Rptr. 98], a case that was criticized by legal writers and later overruled by the *Pas* court itself in *Saucedo* v. *Mercury Sav. & Loan Assn., supra,* 111 Cal.App.3d at pages 310-315. As such, *Jones* and *Manier* are not well-founded. The California Supreme Court has determined that one may only recover attorney's fees pursuant to section 1717 if one "would have been liable" for such fees had the opposing party

prevailed. (*Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at p. 129.) Judging by this language, *Reynolds* and section 1717 require that the party claiming a right to receive fees establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party. To the extent that *Jones* and *Manier* are inconsistent with this ruling, we decline to follow their reasoning.

Leach's bare *allegation* that she is entitled to receive attorney's fees would not have been sufficient to prove her case; she must also have established that the attorney's fees clauses in the promissory note and the deed of trust *actually* entitled her to recover fees. The note and deed of trust were executed by Bell, not Leach. As a plaintiff who was not a signatory to these contracts, Leach would have no independent right to recover fees under the attorney's fees clauses contained in them. Under the mutuality of remedy theory of section 1717, the Prescotts may not recover fees from Leach. (*Reynolds Metals Co.* v. *Alperson, supra,* 25 Cal.3d at p. 129; see *Saucedo* v. *Mercury Sav. & Loan Assn., supra,* 111 Cal.App.3d at p. 315.)

The summary judgments and the order denying attorneys' fees are affirmed. Each party shall bear its own costs on appeal.

Poché, Acting P. J., and Sabraw, J., concurred.