Meike KERPER, Appellant (Defendant),

v.

Janeen KERPER; Jill Kerper; Wyoming National Bank, Personal Representative of the Estate of Loujen Kerper, Deceased; William Daniel Elsom; Ryan Lennon; Colby Lennon; Kara Bereman; and Key Bank–Wyoming, Successor Trustee of Kerper Trust No. 1, Appellees (Plaintiffs/Defendants).

No. 91–34.

Supreme Court of Wyoming.

Oct. 25, 1991.

Rehearing Denied Dec. 18, 1991.

Ross D. Copenhaver (argued) of Copenhaver, Kath & Kitchen, Powell, for appellant.

Janeen Kerper, pro se.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

This is the second appeal of the Kerper family's dispute over trust funds and other legacies left to the four Kerper daughters by their parents. *See Kerper v. Kerper*, 780 P.2d 923 (Wyo.1989). In this appeal, appellant Meike Kerper (Meike) contends the district court erred in determining that oil and gas royalties mistakenly paid into Kerper Trust No. 1 should remain as part of the principal of the trust pending the resolution of other matters in this case. She claims those royalties are the property of the four Kerper daughters, have never lawfully been the property of Kerper Trust No. 1, and, therefore, should now be paid to the four Kerper daughters. Appellee, Janeen Kerper (Janeen), contends that her sister Meike cannot, for a variety of reasons, now pursue this issue on appeal. We hold that Meike's appeal is properly before this court, and that the district court erred in not ordering that the Husky royalties be paid out to their rightful owners. Thus, we reverse that portion of the district court's order which determined the Husky royalties should remain in the principal of the Kerper Trust No. 1, subject to trust indebtedness, and be paid out only as, and if, principal becomes available. In reaching this decision, we employ the equitable device known as a constructive trust.

### ISSUES

Meike raises these issues:

"(1) That portion of the Order Upon Remand as identified in the Notice of Ap-

peal[1] is unsupported by the evidence and contrary to the evidence.

"(2) That part of the Order Upon Remand which is appealed from is contrary to law in that Appellant [Meike] is not treated equally with other income beneficiaries.

"(3) By reason of that part of the Order Upon Remand which is appealed from, there is error in the assessment of the amounts to be paid to Appellant which deprive Appellant of oil and gas royalty income previously found to be vested in her, while approving payment of such royalty income to other income beneficiaries who are of equal status.

"(4) That part of the Order Upon Remand which is appealed from constitutes a gross inequity, injustice and penalty upon Appellant without cause or reason, in violation of her right to be treated equally with other income beneficiaries by reason of which Appellant is injured and damaged."

Janeen states these issues in response: "1. Whether appellant, in submitting only a partial record to this court, has sustained her burden of demonstrating that the order appealed from is not supported by substantial evidence?

"2. Whether appellant's appeal is an attempt to appeal an order which has become final and is not subject to review?

"3. Whether error, if any, was invited by appellant?

"4. Whether, by accepting the benefits of the district court's order, appellant has waived her right to appeal?"

## PROCEEDINGS AND FACTS

We are reviewing, for a second time, the district court's disposition of this very complex family dispute over trust funds and other property which were left to the Kerper daughters by their parents. *See Ker-*

per v. Kerper, 780 P.2d 923. The dispute has turned a long-term legacy of considerable value into a short-term benefice for lawyering skills and a diseconomy for the Wyoming court system, as a district court and this supreme court attempt to sort out problems that virtually defy judicial resolution. This *Bleak House*[2]-like tragedy could likely have been avoided if the beneficiaries of the Kerper trusts had employed some small measure of the common sense and legal acumen with which their parents were so generously endowed.

The dispute at this stage of the proceedings is whether funds, which we shall identify as the "Husky royalty," are the property of the Kerper daughters or part of the principal of Kerper Trust No. 1. The record reveals the royalties were initially paid by Husky Oil but are now paid by Marathon Oil. For purposes of simplicity, they will be referred to in this opinion only as the "Husky royalties."

The district court determined in a partial summary judgment, entered on March 31, 1987, that:

"I. *HUSKY ROYALTY.*

"A. *Findings of Fact.*

"(1) The Declaration of Trust, executed by Loujen Kerper as purported Trustor, dated September 7, 1965, as to the Husky Oil royalty, (1) provides for vested remainders, in equal one-fourth (¼) shares to MEIKE KERPER (formerly Minabelle Kerper Milodragovich) LOUJEN KERPER (formerly Loujen Kerper Kuiva), JANEEN KERPER and JILL KERPER; (2) pursuant to the terms of this trust and the accomplishment of its purposes, this trust terminated and became distributable to said four remaindermen on September 1, 1967 and at all times since; (3) that the said four remaindermen were then and now are entitled to conveyance of each of their undivided one-fourth (¼)

---

1. *See* p. 410–411 for the text referred to.

2. *Bleak House*, Charles Dickens' ninth novel. In this novel, Dickens relates the extraordinarily complex story of *Jarndyce v. Jarndyce*. The novel must be read to appreciate its tangled story of familial apprehensiveness. The final

result is that, after years of hostility and resentfulness, the family fortune has been consumed by lawyers—not lawyers necessarily eager to engage in fee enhancements—but lawyers hired and paid to tourney the family battle. *See* Hardwick and Hardwick, *The Charles Dickens Encyclopedia*, Scribner's (1973).

interest therein together with any accumulated income, but for the Order of this Court hereinafter deferring such distribution and payment.

"B. *Conclusions of Law.*

"(1) The Amendment to Declaration of Trust No. 1, executed by Loujen Kerper as purported Trustor on May 30, 1972, was not effective as to the 1965 Declaration of Trust for two reasons. First, the 1965 Declaration had already expired by its terms, and secondly, no power to revoke, amend or modify had been reserved in the 1965 Declaration of Trust and, accordingly by operation of law, it was irrevocable and not subject to any amendment or modification.

"(2) The Amendment to Declaration of Trust No. 1 did not constitute a partial modification of the trust as to only Loujen Kerper's undivided one-fourth (¼) thereof, because the real settlors never consented to any such modification, either before or after the trust expired by its terms on September 1, 1967.

"(3) Application of the Wyoming Principal and Income Act, W.S. § 2-3-601 et seq. (1977) to this trust is moot, all principal and income being distributable to the same four persons as both income and remainder beneficiaries."

No issue is raised as to the validity of these findings, but Meike contests the district court's application of these findings to the issue of when, and under what circumstances, the Husky royalties should be paid out to the Kerper daughters. Meike, in essence, contends the ultimate result of the district court's partial summary judgment should have been that all sums payable from the Husky royalty are immediately distributable to the owners. It is evident that much of it was "distributed" to some of the daughters in the form of loans. Janeen borrowed almost the amount she was entitled to as a distribution, or $36,500. Loujen Kerper applied the indebtednesses owed the trust by three of the daughters against the distribution owed them by the trust. Janeen Kerper owed the trust $36,500, Loujen Kerper owed the trust $30,000, and Jill Kerper owed the trust $10,000. Meike Kerper owed the trust nothing.

However, for the period May 1985 through September 8, 1987, instead of paying out that portion of the royalties not applied to an indebtedness, Loujen Kerper, as trustee, and in reaction to the initiation of this litigation which had the potential to require the Kerper daughters to repay a large sum of money to Kerper Trust No. 1, simply showed all undistributed royalties as "accounts payable" from the trust. The effect of all this was that Janeen had received distribution of her full share of the royalty (less $92) and Meike had received nothing.

## DISCUSSION

Meike contends the monies shown as accounts payable should now be paid out to their rightful owners. Janeen responds that Meike misunderstands the accounting and the "mathematics" which need to be employed in determining what monies should now be distributed to the Kerper daughters. Janeen seriously misapprehends Meike's argument when she attributes to Meike a proposed disposition of the Husky royalties we are unable to discern from Meike's brief. Janeen also contends Meike has failed to demonstrate that the decision of the district court is not supported by substantial evidence. She appears to comprehend Meike's argument as one contesting the facts found by the district court, but which Meike attempts to disguise as an issue of law. Again, we perceive just the opposite.

Meike's protest is not that the accountings are inaccurate or the facts otherwise insufficient to sustain the order upon remand. Rather, she asserts the district court's determination that the Husky royalties should be paid out only as, and if, principal of the trust becomes available is inconsistent with the law applied in the initial decision which was that the Husky royalties were the individual property of the Kerper daughters and, thus, should never have been mingled with the property of the Kerper Trust No. 1. We hasten to add that the record supports the conclusion that Loujen acted in good faith when she included the Husky royalties in the Kerper

Trust; but, nonetheless, she did so mistakenly.

Janeen also contends Meike argues that the Kerper Trust No. 1 owns the royalties which Meike claims should be distributed. Once again, our perception is the opposite. Meike's argument recognizes that Kerper Trust No. 1 does not now, and never did, own the Husky royalty. The argument may not have been as clearly worded as Janeen's, or this court would like, but the disposition we make is that for which Meike has contended. Meike's conclusion then is that if the Husky royalty is owned by the daughters individually, there is no reason why those sums should not now be paid to them in sums accurately reflected in the court's order.

■ In addition, Janeen claims Meike invited the error of which she now complains by proposing findings of fact and conclusions of law which were adopted as a part of the district court's March 1987 summary judgment. This is at best a non sequitur since that judgment was in large part reversed by this court. *Kerper v. Kerper*, 780 P.2d 923. The proposed findings of fact and conclusions of law which Janeen would have serve as a roadblock to this appeal were submitted in reaction to a judgment that is now largely revised. We do not perceive this circumstance as an impediment to Meike's instant appeal.

■ Janeen also argues that because Meike has accepted some benefits of the district court's order on remand she may not appeal from that portion of it which she finds objectionable. This contention is based upon a theory of judicial estoppel. The authority cited by Janeen simply does not support that proposition. An appealing party may often be in the position of having won half a loaf in the district court and yet that circumstance, standing alone, is no bar to an appeal that seeks an opportunity to gain the other half loaf as well. Here, Meike's appeal is unrelated to any benefits she received under other aspects of the district court's order on remand or the earlier partial summary judgment. Under the partial summary judgment, there was no reason for Meike to contest the holding of

the Husky royalty by Kerper Trust No. 1 because that judgment required her to pay an even larger sum of money back to the trust. Once Meike was freed of that burden by our earlier disposition of this case, then her right to seek a remedy for the Husky royalties held back from her became ripe. There is, quite simply, no issue of judicial estoppel to be decided in this case.

■ Finally, Janeen objects to any relief for Meike claiming her litigating has cost everyone substantial amounts of money. The Wyoming Constitution, Art. 1, § 8 provides that: "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay." Meike was guaranteed access to the courts for resolution of this dispute. She was successful in the trial court. Our reversal was not unanimous. And now Janeen (and Meike) continue litigation. That litigation is costly, does not make it unavailable.

Having disposed of Janeen's initial objections to the validity of Meike's appeal, we proceed to deal with the Husky royalties directly. The revised accounting for the years 1985 through September 8, 1987, revealed that royalties paid to the trust for 1985 were $48,456.67; for 1986 they totalled $25,333.47; and, through September 8, 1987, they were $19,847.99. As noted earlier, some of these royalties were distributed, but the residue of them was held back by the trust either as payments on the indebtednesses of three of the sisters, or as accounts payable where no indebtedness existed. In the Order Upon Remand, the district court found:

"IT FURTHER HEREBY IS ADJUDGED, DECREED AND ORDERED that the following sums of money are payable to the respective persons named from the principal of the Kerper Trust No. 1, but only as and if the said same principal sums become available, and subject to such adjustment, if any, to the said sum payable to Meike Kerper as may appear necessary upon the revised and supplemental accounting of the Key Bank of Cody, Wyoming, as successor trustee, to wit:

| Meike Kerper | $26,445.26 |
| Loujen Kerper | 17,010.41 |
| Janeen Kerper | 92.98 |
| Jill Kerper | 16,858.18 |

\* \* \* \* \* \*

"IT FURTHER HEREBY IS ADJUDGED, DECREED AND ORDERED that the Husky royalty payments set over free of trust pursuant to the partial summary judgment of this Court herein entered on March 30, 1987 be freed from sequestration under the September 8, 1987 Order of this Court by the Key Bank–Cody, in its capacity as successor trustee of Kerper Trust No. 1, and that any said sums of money heretofore sequestered and held by said bank that are traceable to the said Husky royalties, and payable to Loujen Kerper, Meike Kerper, Janeen Kerper, and Jill Kerper in accordance with the partial summary judgment of this Court entered March 30, 1987, be segregated and separately accounted for by the Key Bank–Cody, as successor trustee of Kerper Trust No. 1, and be paid to the following persons in equal shares:

The personal representative of the estate of

Loujen Kerper, now deceased

Meike Kerper

Janeen Kerper

Jill Kerper

"The foregoing said payments of accumulated royalties shall be accounted for by said bank and receipted for by the payees as a special proceeding incidental to this action through this Court."

■ The district court found that the Husky royalty did not belong to Kerper Trust No. 1. We agree with that portion of its judgment. However, the district court erred in providing that those sums which are owed to the four daughters, as a result of the trust mistakenly taking possession of the Husky royalties, are payable only from the principal of the trust as, and if, those amounts become available. We hold that the Kerper Trust No. 1 retains such sums as may be traceable to the Husky royalties in a constructive trust for the four daughters. In so holding, we apply the principles embodied in Restatement of the Law of Restitution, Quasi Contracts and Constructive Trusts, § 165 (1937):

"§ 165. Transfer by Mistake to Person Not Intended.

"Where the owner of property by mistake transfers it to one person under such circumstances that a third person is entitled to restitution from the transferee, the transferee holds the property upon a constructive trust for the third person." *Also see,* Scott, *The Law of Trusts,* Vol. V, §§ 467, *et seq.* (4th ed. 1989); 66 Am.Jur.2d, *Restitution and Implied Contracts,* §§ 118–152; *Thomasi v. Koch,* 660 P.2d 806, 809–12 (Wyo. 1983); *Fuller v. Fuller,* 606 P.2d 306, 309–10 (Wyo.1980).

Applying these principles to the circumstances presented here, Loujen Kerper, in her capacity as a trustee of an earlier trust, mistakenly transferred property which belonged to the four daughters individually to the Kerper Trust No. 1, of which she was also trustee, apparently believing that was the intent of the trust document which governed the disposition of those funds and her parents who originally owned the Husky royalty. The transferee was Kerper Trust No. 1. Thus, Kerper Trust No. 1 held the royalties in a constructive trust for the four Kerper daughters.

In addition to the distributions made in the first five months of 1985 and the distributions made in the form of credits on indebtednesses, a small distribution of the Husky royalty money was made to the Kerper daughters in 1988, but the balance remains unpaid. Janeen received $92.98; and Jill, Loujen and Meike each received $2,654.05. This results in the following Husky royalties remaining unpaid:

Janeen Kerper—None (though she still has a right to interest and/or income from the Husky royalty monies)

Meike Kerper—$23,791.21

Estate of Loujen Kerper—$14,356.36

Jill Kerper—$14,204.13

The record appears to demonstrate that there remains $65,591.12 in monies (including interest and/or income) that should be paid out to the Kerper daughters, in ac-

cordance with their respective rights in that fund. The calculation provided by Meike, which appears to be accurate, demonstrates those monies should be paid out as follows:

Meike Kerper—$27,101.06

Janeen Kerper—$3,309.85

Jill Kerper—$17,513.99

Estate of Loujen Kerper—$17,666.22

Some additional accounting may be required to assure accuracy of these figures and to account for additional interest and/or income earned between the time the above figures were developed and the time when the monies are actually paid out. In imposing this constructive trust, we also hold, and direct that, the funds in the constructive trust must be paid as the first priority of the Kerper Trust No. 1. This is so because, under the principles we hold applicable to this case, the Husky royalty monies never became the property of Kerper Trust No. 1. The trust merely held them in a constructive trust for the Kerper daughters. Thus, no claim that is made against the trust can affect those monies.

We also note that Janeen Kerper maintained in her brief that all Husky royalties, except those attributable to that portion of the 1985 royalty which was not distributed, are held in a separate account and are not part of the Kerper Trust No. 1. If that is indeed the case, then the paying out of these funds should be relatively simple. However, the fact that a significant portion of these funds may be in a separate account does not lessen our concern that the district court's order on remand appears to make them a part of the Kerper Trust No. 1. The district court directs that they may be paid out only as, and if, those sums become available from the principal of Kerper Trust No. 1. We add this to clarify that whether these Husky royalty monies are actually in the Kerper Trust No. 1, or in a separate account, or both, they are required to be paid out in accordance with the sense of this opinion.

The order of the district court upon remand is reversed to the extent described above, and the case is remanded to the district court with directions that the Husky royalty monies be paid out to the Kerper daughters from the Kerper Trust No. 1, or such other fund in which they may be found, in accordance with this opinion.