266 So.2d 291

John C. RAY and R. M. Plough

v.

MIDFIELD PARK, INC.

6 Div. 902.

Supreme Court of Alabama.
July 20, 1972.

Rehearing Denied Sept. 14, 1972.

Huey, Stone & Patton, Bessemer, for appellee.

E. Duncan Hamilton, Birmingham, for appellants.

HARWOOD, Justice.

Midfield Park, Inc., (hereinafter referred to as Midfield) leased to John C. Ray certain premises for use as a restaurant. The lease was for ten years with a right of renewal for two additional terms of five years each. Rent was fixed at $400.00 per month payable in advance.

The lease was amended to make the term begin 1 September 1959. The lease would therefore expire at midnight 31 August 1969, unless renewed. In case of renewal the lessee was to give to the lessor "written notice of his intention to exercise this option at least six months prior to the expiration of this lease."

A controversy arose over the renewal of the lease, and Midfield filed a declaratory action, in equity. In addition to Ray, R. M. Plough was named as a respondent because of Midfield's view that he was in actual possession of the premises claiming to occupy the same as a subtenant of Ray.

The bill alleged, among other things, that Ray did not exercise his option to renew the lease for an additional five years because of failure to give Midfield a written notice at least six months prior to the end of the ten year term, and that the rights of Ray and those holding under him expired and terminated on 31 August 1969.

The bill further avers in paragraph 5 that on 22 March 1969, Midfield received a registered letter from Ray stating that he desired to renew the lease, which notice was not within the period of six months prior to the expiration of the lease; that Midfield notified Ray by letter dated 26 March 1969, that since Ray did not exercise his option to renew the lease as provided therein, Midfield would not renew the lease (paragraph 6). Copies of the lease and of the correspondence between Ray and Midfield were attached to and made a part of the bill.

The bill further averred in paragraph 8 that the premises have been in the actual possession of the respondent Plough for several years, and Plough claims to occupy the premises as a subtenant of Ray, though Midfield has never recognized him as such or approved or consented to Ray subletting the premises as provided in the lease.

The bill prayed that the court find and declare that Ray did not renew the lease because of failure to give written notice within the time provided in the lease, and that all rights of Ray and anyone claiming under him should end at the termination of the lease on 31 August 1969. It was further prayed that Ray and all other persons holding under him be directed to quit said premises on or before 31 August 1969, and upon failure to timely surrender the premises that a writ of restitution be issued to the party in possession.

Ray and Plough respectively filed demurrers to the bill which were overruled. A jury trial was also demanded.

Ray and Plough then jointly filed an answer to the bill, the portions material to this review being that they denied that they did not give the required notice to renew to Midfield, and aver in paragraph 4 of their answer that when they inquired of Midfield when notice to renew the lease should be given, they were informed that they could renew the lease at any time within six months of the termination of the lease, and prior to March 1, 1969, and that Midfield represented to Ray and Plough that no formal notice to renew would be required, and that they relied on such representation.

The answer further stated in paragraph 5 that Ray and Plough were without knowledge or information sufficient to allow them to deny or to confess and avoid the averments of the bill relative to the correspondence between Ray and Midfield concerning the renewal of the lease. It should be noted here that the letter from Ray to Midfield, and Midfield's reply thereto, were by registered mail or by certified mail.

Ray and Plough also denied that Plough was in actual possession of the premises or that he claimed to hold the same as subtenant of Ray (paragraph 8).

It was prayed that the answer be considered in the nature of a cross bill, and that the court award the cross complainants damages in the sum of $5,000.00 because of harassment, trespasses, and loss of business resulting from Midfield's efforts to destroy their business.

Midfield moved to strike Ray and Plough's demand for a jury trial and this motion was overruled.

Ray and Plough then amended their answer and cross bill by striking paragraph 4 and substituting in lieu thereof paragraph 4A which averred that in September and October 1968, they had one or more conversations with William Phillips, President of Midfield, and David Phillips, General Manager of Midfield, and that an agreement was reached between the parties to renew the lease on the same terms as the original lease, notwithstanding the provisions in the original lease as to written notice of renewal, and reliance was placed on this agreement by Ray and Plough. It was further averred that written notice of renewal of the lease could be given *within* six months of the expiration of the lease.

Midfield's demurrer to the amendment was overruled.

Midfield then filed a lengthy amendment to their complaint. The averments of paragraph 4A of the answer and cross bill were denied, and it was asserted that Ray and Plough are estopped to assert any waiver of the terms of the lease as to written notice to renew allegedly made in September and October 1968, in that Ray by his letter of 18 March 1969, stated he desired to renew the lease according to its terms, and was advised by Midfield that his offer to renew was too late, and further that Donald Collins, attorney for Ray wrote Midfield on 27 March 1969, contending that Ray's letter of 18 March 1969, attempting to renew the lease, constituted a substantial compliance with the lease. It was further averred by Midfield that Ray and Plough did have knowledge of the above mentioned correspondence which was attached as exhibits to the bill.

Ray and Plough amended their answer and cross bill three more times in respect to paragraph 4, each time striking the paragraph and substituting the amended paragraph. The final amendment was designated paragraph 4D. In 4D it is averred that Plough was the assignee of the lease as shown in paragraph 8A of the answer and cross bill; that on 29 October 1968, R. M. Plough and Mrs. R. M. Plough, his wife and employee, had one or more conversations with William Phillips, President of Midfield, and a renewal of the lease was agreed upon and accepted by Phillips notwithstanding the notice of renewal provision in the lease; that Phillips represented to the Ploughs that written notice to renew the lease could be given at any time within six months from the termination on 31 August 1969, and such representation was relied on by Plough, and that Midfield is estopped to rely upon the renewal provision in the lease.

The record shows that this cause was called for a hearing on 20 October 1969. A jury was selected. After lengthy opening statements and much colloquy by opposing counsel, the court ex mero motu declared a mistrial for the purpose of settling the pleadings.

On 12 October 1970, a second trial was begun. A jury was selected and upon opening statements by counsel, the court peremptorily instructed the jury to find that the lease had not been renewed for an additional term of five years. Exception to this action by the court was taken by the respondents. Despite the instructions of the court the jury returned a verdict that the lease had been renewed. On motion this verdict was set aside by the court.

On 26 May 1971, this cause again came on for hearing. In qualifying the jury venire, the court asked the jurors whether they would "not accept a directed verdict by the Court as a question of law * * * and if you feel that way please stand up and give us your name. You will be excused." No juror indicated any reply to this question by the court.

After this a jury was selected. The court, despite request by counsel for respondents that counsel be permitted to make an opening statement to the jury, replied that: "It's a matter of law rather than a matter of evidence." The court thereupon peremptorily instructed the jury to find that the lease had not been renewed, no evidence was presented.

Due exceptions were taken to this action by the court. This time, the jury returned a verdict pursuant to the instructions of the court.

Thereafter on 3 June 1971, the court filed a lengthy document entitled "PreTrial Order."

On 5 August 1971, the court entered a final decree. This decree recited that the cause was submitted on the bill of complaint as last amended, the respondents' answer, as last amended, the court's pretrial order made pursuant to Equity Rule 38, and the verdict of the jury rendered on the trial had on 26 May 1971.

The court then decreed that the lease was not renewed for an additional term of five years, and that the respondents and all persons holding under them vacate the premises within ten days, otherwise appropriate writs for possession would issue.

This appeal followed.

Assignments of error 25 through 30 relate to the action of the court in refusing to permit counsel to make an opening statement to the jury, to present any evidence, and in instructing the jury peremptorily to find that the lease had not been renewed for a term of five years. We think these assignments may well be considered together.

Counsel for Midfield seeks to justify these actions on two grounds, (1) the inconsistencies in the answer and cross bill, and (2) that no issues remained to be submitted for determination by a jury in view of the limiting effect of the purported pretrial order filed by the court.

It is true that paragraph 8 of the answer and cross bill originally denied that Plough was in possession of the premises. However, this paragraph was stricken and paragraph 8A was substituted in lieu thereof. Paragraph 8A averred that Plough was in actual possession of the premises; that Ray and Plough were partners at the commencement of the lease, but thereafter Ray assigned the lease to Plough who was recognized by Midfield as tenant of the premises in that Midfield accepted rent from Plough for the term of the lease.

Likewise, as to paragraph 4 of the answer and cross bill, there is an inconsistency between paragraph 4 and as it was finally amended as paragraph 4D.

It should be noted that in each instance the paragraph sought to be amended was stricken, and the amendment was substituted in lieu thereof.

Counsel for Midfield contends that a party who, with knowledge of the facts, has assumed a particular position in judicial proceedings, is estopped to assume a position inconsistent therewith, to the prejudice of the adverse party and that such is the principle laid down in Brown v. French, 159 Ala. 645, 49 So. 255.

Brown v. French, supra, was an action for forcible entry and detainer brought originally in a Justice of the Peace Court. In order to remove the case to the circuit court and give that court jurisdiction, the defendant executed an affidavit that he had entered the premises peaceably and not under agreement with the plaintiff. At the trial, over the objection of the plaintiff, the defendant was permitted to show that the entry was with the consent of the plaintiff. This court held that the introduction of such evidence was error since without the defendant's affidavit the case could not have been removed to the circuit court, and the defendant was estopped from denying his affidavit. This situation presents a clear picture for the operation of judicial estoppel in that the jurisdiction of the circuit court was invoked by the oath of the defendant, and he could not be heard to deny the validity of the evidence established by the affidavit.

■ Likewise, in United Security Life Ins. Co. v. Birmingham Trust National Bank, 282 Ala. 295, 211 So.2d 139, another case cited and relied on by counsel for Midfield, the appellant had introduced over objection, an affidavit showing that all capital stock in a corporation had been paid for. Later, the appellant sought to show that such stock had not actually been paid for. The court sustained an objection to the question seeking to elicit such testimony and we held that the court properly ruled in the instance. In general, a party is estopped to deny the validity of evidence which he himself has injected into evidence.

Maner v. Maner, 279 Ala. 652, 189 So.2d 336, also relied on by counsel for Midfield, is another example of judicial estoppel arising from the husband's sworn plea in abatement based on a claimed residence in Florida, filed in a divorce proceeding instituted by the wife in Montgomery County, Alabama. Before the expiration of a year, the husband filed a bill for divorce alleging he had resided in Montgomery County, Alabama, for more than a year. Having sought to defeat the jurisdiction of the court by his sworn plea in abatement, that he was a resident of Florida on 17 June 1963, he was estopped to assert in his own bill that he had been a resident of Montgomery County, Alabama, for more than one year when his bill was filed less than one year from the date of the sworn plea in abatement.

■ These cases are not apposite to unsworn pleadings which may be inconsistent. Midfield contends that because the court overruled its demurrer to amended paragraph 4A of the answer and cross bill, the respondents and cross complainants thereby gained a favorable position and were estopped to file any further inconsistent answers.

In view of the doctrines of our cases as to inconsistent pleas or answers, we consider this contention to be without merit.

In Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59, it is stated:

"A defendant, by separate pleas, may make as many defenses as he sees proper, and the pleas are not objectionable because of repugnancy or inconsistency with each other. The rule does not apply to single pleas. A single plea should be consistent with itself."

■ While the above enunciation was in connection with a case at law, the same principle applies to answers in equity proceedings, for in Bromberg v. First National Bank of Mobile, 235 Ala. 226, 178 So. 48, it is stated:

"Equity will consider the full answer that justice be done in the premises, notwithstanding confusion or conflict contained in the answer."

Counsel for Midfield also contends that the pretrial order of the court precludes any consideration of the question of waiver of notice raised by the answer and cross bill since the court in the pretrial order found that Ray and Plough knew of the existence of the correspondence between Midfield and Ray and the same was taken as confessed by Ray and Plough, and the court further stated in its pretrial order that Ray did not give the required written notice of renewal of the lease within six months from the termination of the lease.

This of course assumes the existence of a valid pretrial order.

Under Equity Rule 38, the Chancellor on motion of either party, or on his own motion, may have the attorneys for the parties appear before him for the purpose of simplifying the issues, settling the pleadings, etc. However, this section concludes:

"The court shall *make an order* which recites the action taken at the conference, the amendments allotted to the pleadings, and the agreements made by the parties as to any matters considered, and which limits the issues for trial to those disposed by admissions or agreements of counsel; *and such order when entered controls the subsequent course of the action,* unless modified at the trial to prevent manifest injustice." (Italicizing ours.)

■ We think it implicit in Equity Rule 38 that the court must enter a written pretrial order prior to entering upon a trial of a cause. Otherwise the very designation *Pretrial Order* is meaningless. True, the Chancellor states in his pretrial order that he had "advised the parties and counsel as to what the substance of this order would be, the court has deferred making this order until after the jury verdict so that any further amendments to the pleadings could be recorded therein."

■ However, since this purported pretrial order was not entered until a week after the verdict of the jury rendered upon peremptory instructions of the court, it could hardly be deemed to have controlled the course of the action resulting in the jury verdict.

Litigation being an adversary proceeding, and attorneys being advocates, it follows that the respective attorneys will press their own interpretation of pretrial orders to their own advantage as to what conclusions, agreements, and results were reached at a pretrial hearing. For this reason, it is of utmost importance that a written pretrial order be entered stating with precision the terms and conditions resulting from the pretrial hearing. An oral statement by the court as to the substance of a pretrial order the court intends to enter will not suffice, certainly where, as here, the order is not entered until after a trial and a verdict by a jury. Otherwise a pretrial order could serve as a bed of Procrustes into which any decree could be

fitted. We hold that the purported pretrial order tardily entered in this case is of no force and effect, and cannot be considered.

We also conclude that the action of the court flies in the face of Equity Rule 58, which provides:

"Except in causes seeking injunctions, receivers, or other extraordinary relief requiring the bill or petition to be verified by oath, submission on bill and answer, without testimony, is abolished unless by agreement of all the parties other than those against which decrees pro confesso have been lawfully taken."

In his 'final decree the Chancellor states that the cause was submitted "upon the bill of complaint, as last amended, the respondents' answer, as last amended, the court's pretrial order made pursuant to Equity Rule 38, and the verdict of the jury rendered upon the trial had May 26, 1971 * * *"

We have already concluded that the pretrial order is of no efficacy. We likewise do not think that a jury verdict rendered upon peremptory instructions of the Chancellor could alter the necessary conclusion that this cause was in effect submitted solely upon the complaint as amended, and the answer as amended. Not only was this action taken without the consent of the respondents, but over their strenuous objections and exceptions.

In this posture of the record, we conclude that error requiring a reversal of this decree resulted from the action of the court in peremptorily instructing the jury to return a verdict that the lease had not been renewed for a term of five additional years.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, COLEMAN and MADDOX, JJ., concur.